IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-60793
Summary Calendar
_____

HOWARD GUNN, Individually, and on behalf of
all others similarly situated,

Plaintiff-Appellee,

versus

CHICKASAW COUNTY, MISSISSIPPI, ET AL.,

Defendants,

CHICKASAW COUNTY, MISSISSIPPI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:92-CV-142

_____

December 18, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Howard Gunn, individually, and on behalf of all others
similarly situated (the "plaintiffs"), filed the instant lawsuit
against Chickasaw County, Mississippi, alleging that Chickasaw
County's justice court judge/constable reapportionment plan was
designed to dilute, minimize, and cancel the votes of the black

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

residents, thereby violating the Fourteenth and Fifteenth Amendments of the United States Constitution. The plaintiffs alleged that the electoral scheme also violated Sections 2 and 5 of the Voting Rights Act of 1965, as amended.

After conducting a two-day bench trial, the district court found that Chickasaw County's current districting plan violated Section 2 of the Voting Rights Act of 1965 ("Section 2"), as well as the Fourteenth and Fifteenth Amendments. The district court ordered the parties to submit a joint proposal creating a majority-black justice court judge/constable district in Chickasaw County within sixty days of the judgment and awarded Gunn his reasonable attorney's fees and costs. The defendant filed a timely notice of appeal. The district court stayed its joint-proposal order pending completion of the instant appeal. On appeal, the defendant argues that the district court clearly erred in holding that Chickasaw County's justice court judge/constable districts violate Section 2. Because we find that the district court did not err in reaching its decision, we affirm.

I

A district court's findings in a Section 2 case are reviewed for clear error.[1] Magnolia Bar Ass'n v. Lee, 994 F.2d 1143, 1147

---

[1]The defendant contends that, because it argues that the district court applied incorrect legal standards and made findings of fact based on these standards, this court should review the district court's judgment de novo. Findings of fact in Section 2 cases, even when based on a misreading of the applicable law, are reviewed for clear error. See Johnson v. De Grandy, 512 U.S. 997,

(5th Cir. 1993).  If the district court applied the correct legal standards, its findings should not be reversed if they are plausible in the light of the record viewed as a whole.  <u>Id.</u>

Section 2 states that:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color . . . .

42 U.S.C. § 1973(a).  A plaintiff must initially prove three preconditions in order to establish that an at-large voting scheme dilutes minority voting strength, thereby violating Section 2. <u>Thornburg v. Gingles</u>, 478 U.S. 30, 48-51 (1986).  The minority group must establish that: (1) "it is sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) "it is politically cohesive"; and (3) "the white majority votes sufficiently as a bloc to enable it--in the absence of special circumstances, such as the minority candidate running unopposed--usually to defeat the minority's preferred candidate." <u>Id.</u> at 50-51 (internal and external citations omitted).  These so-called <u>Gingles</u> preconditions also apply to challenges to single-member districts.  <u>Growe v. Emison</u>, 507 U.S. 25, 39-41 (1993).

After satisfying the <u>Gingles</u> preconditions, the minority group must establish a Section 2 violation by showing that, based on the

---

1022 (1994)(holding ultimate finding of dilution in districting that was based on misreading of governing law to be clearly erroneous).

3

totality of the circumstances, they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." § 1973(b). Section 2 makes clear that a violation may be proved by showing discriminatory effect alone, thereby codifying the "results test" set forth in White v. Regester, 412 U.S. 755 (1973). Gingles, 478 U.S. at 35.

II

The defendant argues that the district court clearly erred in determining that the black population of Chickasaw County was sufficiently geographically compact to compose a majority in a single-member district. The defendant argues that the plaintiffs' proposed majority-black districts are so bizarrely-shaped that they were obviously drawn solely based on race. Id.

"The first Gingles precondition does not require some aesthetic ideal of compactness, but simply that the black population be sufficiently compact to constitute a majority in a single-member district." Clark v. Calhoun County, 21 F.3d 92, 95 (5th Cir. 1994)("Clark I")(citation omitted). "[P]laintiffs' proposed district is not cast in stone . . . [but] was simply presented to demonstrate that a majority-black district is feasible in [the county at issue]." Id. These districts must necessarily be drawn based on race in order to qualify as majority-black districts. The district court noted that the plaintiffs' proposed redistricting plan created a majority-black district by generally

4

following supervisor-district lines with only two small splits. Because it was plausible for the district court to find that the plaintiffs' proposed majority-black districts satisfied the first Gingles precondition, the district court did not clearly err.

III

The defendant also argues that the district court clearly erred in concluding that, based on the totality of the circumstances, Chickasaw County's justice court judge/constable districts violated Section 2. Courts are guided in their totality of the circumstances inquiry by the so-called Zimmer[2] factors, which include:

> '[T]he history of voting-related discrimination in the State or political subdivision; the extent to which voting in the elections of the States or political subdivision is racially polarized; the extent to which the State or political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group, such as unusually large election districts, majority vote requirements, and prohibitions against bullet voting; the exclusion of members of the minority group from candidate slating processes; the extent to which minority group members bear the effects of past discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process; the use of overt or subtle racial appeals in political campaigns; and the extent to which members of the minority group have been elected to public office in the jurisdiction.'

Clark v. Calhoun County, 88 F.3d 1393, 1396 (5th Cir. 1996) ("Clark II")(quoting Gingles, 478 U.S. at 44-45). The district court should also consider "'evidence demonstrating that elected

---

[2] Zimmer v. McKeithen, 485 F.2d 1297 (5th Cir. 1973)(en banc).

5

officials are unresponsive to the particularized needs of the members of the minority group and that the policy underlying the State's or the political subdivision's use of the contested practice or structure is tenuous may have probative value.'" Id. (quoting Gingles, 476 U.S. at 45).

The defendant argues that the district court clearly erred in finding that evidence regarding the responsiveness of elected officials to the needs of the black community did not favor either party. Although the defendant cites to the testimony of two witnesses regarding instances when elected officials responded to the needs of the black community, the testimony of one of these witnesses was rebutted by subsequent testimony. In sum, the evidence cited by the defendant "do[es] not reflect the comprehensive and systematic responsiveness to minority needs that is entitled to substantial weight in the totality-of-circumstances inquiry." Clark II, 88 F.3d at 1401.

The district court further found that the plaintiffs had established the two most relevant factors: "the extent to which minority group members have been elected to public office in the jurisdiction" and the "extent to which voting in the elections and the state political subdivision is racially polarized." R. 89-90; see also Gingles, 478 U.S. at 48 n.15. The defendant argues that the district court's finding that voting in Chickasaw County was racially polarized was not supported by sufficient evidence. The district court noted, however, that the plaintiffs presented expert

6

testimony that voting in Chickasaw County was racially polarized and that this testimony was supported by actual election results in Chickasaw County.

The defendant also argues on appeal that the election of several black candidates in various positions in Chickasaw County indicates that blacks have previously been elected to public office in Chickasaw County and contradicts the district court's finding of significant racial bloc voting. However, the fact that a black candidate was elected in a political subdivision in which blacks constitute a minority does not necessarily indicate significant crossover-voting by whites, as a candidate may be uncontested or may be elected by a minority in a race with multiple candidates. See Gingles, 478 U.S. at 56 (black voters' ability to elect representatives of their choice is dependent on many factors, such as number of seats open and number of candidates in field). In this case, only one of the black candidates indicated by defendant was elected as a constable and none was elected as a justice court judge. See Gingles, 478 U.S. at 57 (fact that some individual elections do not indicate racially polarized voting does not negate conclusion that district experiences legally significant racial bloc voting, and success of minority candidate in particular election does not necessarily indicate that the district did not experience racially polarized voting); Magnolia Bar Ass'n, 994 F.2d at 1149 (elections involving particular office at issue are more relevant than elections involving other offices). Racial

polarization in elections in Chickasaw County has been previously established. See Gunn v. Chickasaw County, 705 F. Supp. 315, 320 (N.D. Miss. 1989)(ultimately holding Chickasaw County's redistricting plan for supervisory districts violated Section 2). Because it was plausible that the plaintiffs established these two critical factors based on the record as a whole, the district court did not clearly err.

The defendant finally argues that the district court clearly erred in finding a socio-economic difference between blacks and whites in Chickasaw County, resulting in lower voter participation by blacks. Expert testimony and lay testimony by Gunn supported the district court's finding. The district court also took judicial notice of Mississippi's and Chickasaw County's history of discrimination in the area of voting and the fact that Gunn was the first black to register to vote in Chickasaw County, which was accomplished in 1963 by order of the court.

Because its finding was plausible in the light of the record as a whole, the district court did not clearly err.

IV

The defendant contends that the district court clearly erred in concluding that a majority-black district could be created without unduly subordinating race-neutral districting principles to strict scrutiny racial considerations. The defendant argues that the plaintiffs' proposed majority-black district cannot withstand strict scrutiny, as mandated by Miller v. Johnson, 515 U.S. 900,

8

916 (1995).  The plaintiffs' proposed majority-black district was submitted for the purpose of satisfying the first <u>Gingles</u> precondition.  This court has held that <u>Miller</u> does not apply to the first <u>Gingles</u> precondition.  <u>Clark II</u>, 88 F.3d at 1406-07.  The defendant's argument therefore has no merit.

V

After a thorough examination of the record and the briefs submitted by the parties, we find no clear error.  The district court's findings were plausible in the light of the record read as a whole and the decision of the district court is therefore

A F F I R M E D.